# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

CRISTOBAL RAMOS QUIROZ,

          Plaintiff,

      v.

UNITED STATES OF AMERICA,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:21-cv-00364-AWI-SAB (PC)

FINDINGS AND RECOMMENDATION
RECOMMENDING DISMISSAL OF ACTION
FOR FAILURE TO STATE A COGNIZABLE
CLAIM FOR RELIEF

(ECF Nos. 16, 17)

Plaintiff Cristobal Ramos Quiroz is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Currently before the Court is Plaintiff's second amended complaint, filed on July 19, 2021. (ECF No. 16.)  On August 17, 2021, Plaintiff submitted another complaint which the Court construed and filed as a supplement to the second amended complaint.  (ECF No. 17.)

## I.

## SCREENING REQUIREMENT

A complaint filed by any  person proceeding *in forma pauperis* is subject to sua sponte dismissal,  if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); <u>see</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); <u>Calhoun v. Stahl</u>, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); <u>Barren v. Harrington</u>, 152 F.3d 1193 (9th Cir. 1998) (affirming *sua sponte* dismissal for failure to state a claim).

The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability...'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

### ALLEGATIONS IN COMPLAINT

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff seeks relief for negligence, negligent infliction of emotional distress, malicious prosecution, and violations of the Fourth, Fifth, Sixth and Fourteenth Amendments arising out of the investigation which lead to defective underlying deportation proceedings and unlawful deportation to Mexico for eight years.

As stated in the Court's July 14, 2021 screening order, on July 20, 2020, Plaintiff filed a petition to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, in case number 1:02-cr-05179-NONE, wherein Plaintiff claimed that 2002 conviction for illegal reentry into the United States

2

1   in violation of 8 U.S.C. 1326 was predicated on an unlawful removal.  (Case No. 1:02-cr-05179-

2   NONE, Doc. No. 27.)  The Court construed Plaintiff's petition as a request for a writ of error coram

3   nobis, granted the writ, and vacated the conviction and sentence.  In granting the petition, the Court

4   stated, pertinent part:

> The facts and circumstances of petitioner's claim satisfy each of the four factors to be
> considered when granting or denying coram nobis relief.  First, no other avenue for relief is
> available to petition at this point, and second, it is clear that petitioner has a quite valid reasons
> for not attacking his illegal reentry conviction sooner.  … Third, adverse consequences from a
> conviction are presumed. … Here, the consequences from the criminal conviction in this case
> have reverberated in petitioner's life more than once and could theoretically do so again in the
> future.  Those consequences have often been inextricably linked with his initial removal in
> 1999 and are difficult to parse separately.  For example, petitioner was removed from the
> United States for a second time after serving the sentence imposed in this case.  Petitioner
> likewise has had contacts with the state criminal court system since suffering the conviction in
> this action, though it is unclear whether those contacts have resulted in any new criminal
> convictions.  Regardless, the risk of an increased penalty, whether that penalty has manifested
> or not, is exactly the type of adverse consequence contemplated by the Ninth Circuit in Chacon
> and Hirabayashi. … Fourth, the fundamental nature of the error in this case is clear. …
> Petitioner, a lawful permanent resident prior to his removal, was not advised of the availability
> of relief from removal under certain provisions of immigration law during his 1998 removal
> proceedings.  But for that predicate error from which his criminal case flowed, petitioner may
> not have been charged with illegal entry, convicted, and incarcerated for a significant period of
> time.  Petitioner has now been granted relief from his 1999 removal order based on error, and
> for that reason, the continuation and reification of that error that occurred in these criminal
> proceedings cannot stand.

(Id., Doc. No. 35 at 4-7.)  (citations and footnotes omitted).

### III.

### DISCUSSION

#### A.      Bivens Action

Bivens v. Six Unknown Agents, created a remedy for violations of constitutional rights

committed by federal officers acting in their individual capacities. Consejo de Desarrollo Economico

de Mexicall, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir.2007) (citing Bivens, 403 U.S. 388)).

Thus, to state a Bivens claims, a plaintiff must allege that persons acting under the color of federal law

violated his constitutional rights. Martin v. Sias, 88 F.3d 774, 775 (9th Cir.1996) (citing Van Strum v.

Lawn, 940 F.2d 406, 409 (9th Cir.1991)).

An action under Bivens is therefore identical to one brought under 42 U.S.C. § 1983 except for the replacement of a state actor under § 1983 by a federal actor under Bivens. Id.

"In a suit against the United States, there cannot be a right to money damages without waiver of sovereign immunity." United States v. Testan, 424 U.S. 392, 400 (1976). The doctrine of sovereign immunity bars Bivens actions against the United States. Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir.1984). The Court therefore lacks subject matter jurisdiction over Plaintiffs' Bivens claims against the government.  Moreover, "[i]t has long been the rule that the bar of sovereign immunity cannot be avoided by naming officers and employees of the United States as defendants." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir.1985) (citing Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 688 (1949)). Claims against federal officials in their official capacities are essentially claims against the United States. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (citing Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)). Thus, a Bivens action "can be maintained against a defendant in his or her individual action only, and not in his or her official capacity." Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir.1996) (quoting Daly–Murphy, 837 F.2d 348 (9th Cir.1987)).

The Supreme Court has recently emphasized that "the Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity," which is "in accord with the Court's observation that it has 'consistently refused to extend Bivens to any new context or new category of defendants.' " Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017) (first quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009); then quoting Correctional Services Corp. v. Malesko, 534 U.S. 61, 68 (2001)).  Abbasi sets forth a two-part test to determine whether a Bivens claim may proceed.  137 S. Ct. at 1859-60.  A district court must first consider whether the claim presents a new context from previously established Bivens remedies, and if so, it must then apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding Bivens in the absence of affirmative action by Congress.  Id. at 1857-60.

"If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new." Id. at 1859.  The Abbasi Court provided several non-exhaustive examples of differences meaningful enough to make a given context a new one:  "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial

4

guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider."  Id. at 1859-60.

To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments.  See Abbasi, 137 S. Ct. at 1860 (Supreme Court has approved three Bivens claims in the past); Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause).  The Supreme Court has never implied a Bivens action under any clause of the First Amendment.  See Reichle v. Howards, 566 U.S. 658 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."); Bush v. Lucas, 462 U.S. 367 (1983) (declining to extend Bivens to a First Amendment claim); but see Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) ("we have declined to extend Bivens to a claim sounding in the First Amendment . . . Petitioners do not press this argument, however, so we assume, without deciding, that respondent's First Amendment claim is actionable under Bivens.").

At step one, courts must determine whether a claim presents a "new Bivens context." Abbasi, 137 S. Ct. at 1859. If courts answer that question in the affirmative, the analysis moves to step two, which requires a determination of whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 1857 (citation omitted). If such factors exist, courts should not extend "a Bivens-type remedy" to the claims at issue. Id. at 1859.

With regard to the first step of the test, the Court indicated that "even a modest extension is still an extension," and even if the differences are "perhaps small, at least in practical terms," the "new context inquiry is easily satisfied." Abbasi, 137 S. Ct. at 1864, 1865 (emphasis added). Additionally, the context may be different "[e]ven though the right and the mechanism of injury [are] the same...." Thus, a single meaningful difference in "almost parallel circumstances" is sufficient to satisfy the first step of the Abbasi test. Id. at 1860 (finding contexts to be different where two cases both involved a

claim for failure to provide adequate medical treatment under the Eighth Amendment, but one case involved federal prison officials and the other involved a private prison operator).

With regard to step two of the test—i.e., whether there are special factors counseling hesitation—the Court instructed that:

> the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.

Id. at 1857–1858 (emphasis added). The Court reframed the "special factors" inquiry as a question of " 'who should decide' whether to provide for a damages remedy, Congress or the courts?" Id. at 1857. The Court instructed that the "answer will most often be Congress." Id. Notably, courts do not need to reach a definitive answer as to whether the Judiciary is well suited to consider whether to allow a damages action—a mere hesitation is sufficient for a court to find that it should not allow such a remedy.

In applying step two, the Court indicated that, when lower courts conduct the "special factors" analysis, they should consider whether there are "alternative remedies available or other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy...." Id. at 1865 (emphasis added) (internal quotation marks omitted). Additionally, the Court analyzed factors such as whether a claim implicates a governmental policy such that it would entail "inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged," and whether allowing a claim would "interfere in an intrusive way with sensitive functions of the Executive Branch." Id. at 1860–61. Thus, step two of the Abbasi test creates a very low bar. When a case presents a "new Bivens context," there will "most often" be factors that will cause a court to hesitate before allowing a damages action. As a consequence, the Supreme Court's decision in Abbasi is "close to limiting the Bivens cause of action to the circumstances of Bivens, Davis, and Carlson, as it will be very difficult for any case not presenting those facts to survive [the Abbasi] test." See Boudette v. Sanders, Case No. 18-cv-02420-CMA-MEH, 2019 WL 3935168, at * 7 (D. Colo. Aug. 19, 2019) (citing Constitutional Remedies—Bivens Actions—Ziglar v. Abbasi, 131

Harv. L. Rev. 313, 318 (2017) (citing Larry Alexander, <u>Constrained by Precedent</u>, 63 S. Cal. L Rev. I, 20 (1989)).

At issue is whether the <u>Abbasi</u> test precludes Plaintiff's claims for malicious prosecution, false imprisonment, and negligent infliction of emotional distress under <u>Bivens</u>. Given the strict nature of the test, the Court must answer the foregoing question in the affirmative.

For purposes of step one, Plaintiff's claims differ in meaningful ways from the Supreme Court's previous <u>Bivens</u> cases. Plaintiff alleges he was unlawfully convicted and removed from the United States after not being advised of the availability of relief from removal under certain provisions of immigration law during his 1998 removal proceedings. But for that predicate error from which his criminal case flowed, he may not have been charged with illegal entry, convicted, and incarcerated for a significant period of time. By contrast, <u>Bivens</u> involved "a claim against FBI agents for handcuffing a man in his own home without a warrant;" <u>Davis</u> involved "a claim against a Congressman for firing his female secretary;" and the only other recognized context involved "a claim against prison officials for failure to treat an inmate's asthma." <u>Abbasi</u>,137 S. Ct. at 1860 (citations omitted). The most notable difference is that Plaintiff's malicious prosecution and false imprisonment claims involve a considerable risk of "disruptive intrusion by the Judiciary into the functioning of other branches" because it requires an inquiry into the decision making of prosecutors and into the veracity of allegations underlying a prosecutor's decision to charge a defendant with a crime. <u>Id.</u> Additionally, Plaintiff's claims "bear little resemblance to the three <u>Bivens</u> claims the [Supreme] Court has approved in the past...." <u>Id.</u> Therefore, the claim involves a new context, and the Court must proceed to step two of the <u>Abbasi</u> test.

Special factors exist that cause the Court to hesitate before allowing Plaintiff to maintain an action for damages against federal officials for malicious prosecution, false imprisonment, and negligent infliction of emotional distress. Again, an exhaustive list is not necessary. It is sufficient for the Court to recognize that "Congress might doubt the efficacy or necessity of a damages remedy" because there is a risk that it would interfere with prosecutorial discretion, disincentivize law enforcement from sharing information with prosecutors, and disincentivize private citizens from sharing information with law enforcement. <u>Id.</u> at 1865 (emphasis added). Accordingly, the issue

"involves a host of considerations that must be weighed and appraised," so "it should be committed to those who write the laws rather than those who interpret them." Id. at 1857 (citations and internal quotation marks omitted).

Therefore, pursuant to Abbasi, the Court should not "extend a Bivens-type remedy" to Plaintiffs' malicious prosecution, false imprisonment and negligent infliction of emotional distress claims.  Id. at 1859; see also Farah v. Weyker, 926 F.3d 492, 498-502 (8th Cir. 2019) (finding that Bivens action did not extend to claim for malicious prosecution and alternative remedies remained available by way of the Hyde Amendment and the Unjust Conviction law); see also Kornegey v. City of Philadelphia, 299 F. Supp. 3d 675, 682 (E.D. Pa. 2018) ("The Court is unaware of any cases in which a prisoner who was lawfully incarcerated was permitted to proceed with a false imprisonment claim ... based on the conditions of his or her confinement."); see also Brown v. United States, Case No. 11-4421, 2014 WL 1407398, at *5 (D.N.J. Apr. 11, 2014) (noting prior decision that "a prisoner, such as Plaintiff, who is already serving a federal sentence, has no viable claim for false imprisonment in SHU pending an investigation of a prison disturbance or the prisoner's involvement in the prison disturbance."); Goldhaber v. Higgins, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007) ("[T]he Court cannot conceive of a situation in which an incarcerated inmate ... could be subjected to a distinct Fourth Amendment seizure under the facts alleged in the Amended Complaint. It is not clear that a seizure in the prison context could ever violate the Fourth Amendment, even if it is assumed that it is somehow possible for an incarcerated prisoner to be seized.").  Furthermore, for the reasons explained below, the Federal Tort Claims Act provides an alternative remedy for Plaintiff's claims.

**B.     Federal Tort Claims Act**

Plaintiff seeks relief under the Federal Tort Claims Act (FTCA).  28 U.S.C. § 2679.  The FTCA specifies that the "United States shall be liable ... to tort claims in the same manner and to the same extent as a private individual under like circumstances." Id. § 2676.

The terms of the FTCA create liability for the government if the act is a tort in the state where the conduct occurred. Id. § 2671. The FTCA is the exclusive remedy for any tort claim resulting from the act or omission of a government employee acting within the scope his or her employment, with the exception of Bivens remedies for constitutional tort claims. Id. § 2679. The FTCA waives sovereign

8

immunity for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment. Id. §§ 1346(b)(1), 2679(d)(1).

"The United States can be sued only to the extent that it waives its sovereign immunity from suit." Cervantes v. United States, 330 F.3d 1186, 1188 (9th Cir. 2003). "The FTCA, enacted in 1946, was designed primarily to remove the sovereign immunity of the United States from suits in tort." Levin v. United States, 568 U.S. 503, 506 (2013) (internal quotations omitted). "The FTCA waives the federal government's sovereign immunity for tort claims arising out of the negligent conduct of government employees and agencies in circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred." Green v. United States, 630 F.3d 1245, 1249 (9th Cir. 2011). Under the FTCA, "federal district courts [have] exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." Levin, 568 U.S. at 506 (quoting 28 U.S.C. § 1346(b)(1)). State law provides the substantive law governing an FTCA claim. Conrad v. United States, 447 F.3d 760, 767 (9th Cir.2006) ("In assessing the United States' liability under the FTCA, we are required to apply the law of the state in which the alleged tort occurred."); 28 U.S.C. § 1346(b)(1) ("the United States ... [is] liable to the claimant in accordance with the law of the place where the act or omission occurred").

The United States' waiver of immunity, however, is limited by the exceptions set forth in 28 U.S.C. § 2680. One provision, known as the intentional tort exception, "preserves the Government's immunity from suit for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" Millbrook v. United States, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 2680(h)). There is, however, a "law enforcement proviso," which extends the waiver of sovereign immunity to six intentional torts "covering claims that arise out of the wrongful conduct *of law enforcement officers*." Id. (emphasis added) (quoting 28 U.S.C. § 2680(h)) (immunity lifted "with regard to acts or omissions of investigative or law enforcement officers of the United States Government"). Those six intentional torts are assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution. Id. Section 2680(h) defines an "investigative or law enforcement officer" as "any officer

9

of the United States who is empowered by law to execute searches, to seize evidence, or to make

arrests for violations of Federal law."

8 U.S.C. § 1252(g) states, in pertinent part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

In interpreting this section, the Supreme Court has emphasized that the provision does not

encompass the universe of all possible acts and events arising from removal proceedings, but rather

"applies only to three discrete actions that the Attorney General may take; her 'decision or action' to

'commence proceedings, adjudicate cases, or execute removal orders.' " Reno v. Am.-Arab Anti-

Discrimination Comm. (AADC), 525 U.S. 471, 482 (1999).  Both the Ninth Circuit and the Supreme

Court have explained that § 1252(g) "was aimed at preserving prosecutorial discretion." Barahona-

Gomez v. Reno, 236 F.3d 1115, 1119 (9th Cir. 2001); see also Reno, 525 U.S. at 483–85 & n.9 (noting

that § 1252(g) was enacted to protect against "a particular evil: attempts to impose judicial constraints

upon prosecutorial discretion").

This Court lacks jurisdiction to review the removal order.  Thus, even though it was found to

be unlawful, § 1252(g) shields Plaintiff's claims from judicial review.  Indeed, courts have found that

they lack jurisdiction to hear claims arising out of removal proceedings, even if the removal order was

genuinely erroneous. See, e.g., Kareva v. United States, 9 F. Supp. 3d 848, 842–45 (S.D. Ohio 2014)

(non-citizen detained pursuant to non-final order of removal); Hodgson v. United States, No. SA:13-

CV-702, 2014 WL 4161777, at *8 (W.D. Tex. Aug. 19, 2014) (deportation proceedings initiated

against Canadian-born American Indian who could not be deported under the Jay Treaty); Nakamura

v. United States, No. 10-CV-2797 FB RML, 2012 WL 1605055, at *5 (E.D.N.Y. May 8, 2012)

(detention due to immigration consequences of federal drug charges, even though they were

dismissed).

In addition, even if the Court could review Plaintiff's claims, Plaintiff has not provided any

evidence that he has exhausted his administrative remedies.  Pursuant to 28 U.S.C. § 2675(a), prior to

filing a tort suit against the United States, the FTCA requires the exhaustion of administrative remedies. 28 U.S.C. § 2675(a) ("claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail"); McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). A claimant is required (1) to present the claim to the appropriate Federal agency; and (2) the Federal agency must have finally denied the claim in writing and sent by certified or registered mail so as to make a final disposition of the claim or failed to make such a final disposition within six months after being filed by the claimant. 28 U.S.C. § 2675(a); see Jerves v. United States, 966 F.2d 517, 519 (9th Cir. 1992) ("We have repeatedly held that this 'claim requirement of section 2675 is jurisdictional in nature and may not be waived.' ") (citing Burns v. United States, 764 F.2d 722, 724 (9th Cir. 1985) ).

Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a); A.Q.C. ex rel. Castillo v. United States, 715 F. Supp. 2d 452, 457 (2d Cir. 2010) (citing Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 720 (2d Cir. 1998)). A plaintiff may thereafter challenge the agency's final denial in federal district court by filing an action within six months of the date of the mailing of the notice of final denial by the agency. See 28 U.S.C. § 2401(b). If the appropriate federal entity does not make a written final determination within six months of the date of the plaintiff's filing of the administrative claim, the claimant may then bring a FTCA action in a federal district court. See § 2675(a). Administrative exhaustion, is "jurisdictional, [and] cannot be waived." Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005). If the plaintiff fails to first present his claim to the appropriate agency and exhaust administrative remedies, then the plaintiff's tort claims must be dismissed. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)); Foster v. Fed. Emergency Mgmt. Agency, 128 F. Supp. 3d 717, 728 (E.D.N.Y. 2015) ("Failure to comply with [exhaustion] results in dismissal of the suit.").

///

11

1    Here, despite the Court's prior advisement, there is no indication in the second amended

2    complaint that Plaintiff ever presented the tort claims at issue in this action to any federal agency.

3    Rather, Plaintiff contends only "he wants to file an administrative claim under the FTCA…."  (Suppl.

4    Compl. at 26, ECF No. 17.)[1]  Accordingly, Plaintiff has failed to state a cognizable claim under the

5    FTCA.

6                                                      **IV.**

7                                            **RECOMMENDATION**

8    For the reasons stated, Plaintiff's amended complaint fails to state a cognizable section 1983

9    claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has

10   been unable to cure the identified deficiencies and further leave to amend is not warranted. Lopez v.

11   Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

12   Accordingly, it is HEREBY RECOMMENDED that the instant action be dismissed for failure

13   to state a cognizable claim for relief.

14   This Findings and Recommendation will be submitted to the United States District Judge

15   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days**

16   after being served with this Findings and Recommendation, Plaintiff may file written objections with

17   the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

18   Recommendation."  Plaintiff is advised that failure to file objections within the specified time may

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25

26

27   [1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
     CM/ECF electronic court docketing system.

28

12

result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014)

(citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **August 25, 2021**

UNITED STATES MAGISTRATE JUDGE

13